**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**THE B.F. GOODRICH COMPANY, a New York corporation, and ROSEMOUNT AEROSPACE, INC., a Delaware corporation,**

Plaintiffs,

v.

**AUXITROL S.A., and ESTERLINE TECHNOLOGIES CORPORATION, a Delaware corporation,**

Defendants.

Civil No. 00-43 (MJD/JGL)

**ORDER**

APPEARANCES

Daniel W. McDonald, Esq., and Samuel A. Hamer, Esq., for Plaintiffs.

Christopher A. Young, Esq., for Defendants.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 14, 2000, on Plaintiffs' Motion to Amend Protective Order to Grant its In-house Counsel Access to Confidential Information (Doc. No. 25) and Plaintiffs' Motion to Compel Discovery (Doc. No. 30). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

DEC 21 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiffs are suing Defendants Auxitrol and Esterline for trade dress infringement. Defendant Esterline is a holding company, and Defendant Auxitrol is one of Esterline's subsidiary companies. Defendants moved to dismiss the Complaint on the grounds that this court lacks jurisdiction. Plaintiffs are currently seeking limited discovery regarding the Minnesota contacts of Defendants and whether such contacts establish personal jurisdiction over Defendants in this forum.

## I. PLAINTIFFS' MOTION TO AMEND THE PROTECTIVE ORDER

Plaintiffs seek an order modifying the protective order and permitting disclosure of Attorney's Eyes Only documents and information to James M. Rashid, in-house counsel for B.F. Goodrich. Plaintiffs assert they need the knowledge, expertise, and advice of Mr. Rashid to assist with this litigation. According to Plaintiffs, there is little risk of inadvertent disclosure of confidential information. Defendants Auxitrol S.A. ("Auxitrol") and Esterline Technologies Corporation ("Esterline") oppose the motion, maintaining that Plaintiffs are seeking discovery of their trade secrets and that Mr. Rashid has no knowledge relevant to whether this Court has jurisdiction over Defendants.

The parties stipulated to a protective order on August 29, 2000, but could not agree on whether any in-house counsel would be included in the list of individuals who could access Attorney's Eyes Only documents. Thus, the parties agreed in the order to exclude in-house counsel from access to

confidential information and reserve future disputes regarding this issue for resolution by the Court. The relevant part of the protective order states:

> Plaintiffs intend to bring a motion before the Court requesting that B.F. Goodrich inside counsel, James M. Rashid, and an inside counsel for Auxitrol or Esterline be included on the foregoing list. . . . Plaintiffs will not be prejudiced in any way in bringing such a motion regarding paragraph 8 before the Court, nor will Plaintiffs be required to meet a higher burden in making such a motion regarding paragraph 8 for having agreed to the protective order in its present form.

(Stip. Prot. Ord. ¶ 8.)

Ordinarily, a party seeking to modify a protective order must show "'that intervening circumstances [have] obviated the potential 'prejudice' to the nonmoving party." Cordis Corp. v. Scimed Life Sys., Inc., 177 F.R.D. 651, 654 (D. Minn. 1997) (quoting Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 954 (8th Cir. 1979)). Defendants submit that In Re Remington Arms Co., Inc., 952 F.2d 1029 (8th Cir. 1991), provides the proper instructive analytical framework for resolution of this issue. Remington Arms sets forth a three-step process to determine if one party must disclose trade secrets to another party, and if so, directs district courts to issue protective orders. See id. at 1032. However, this Court finds Remington Arms analysis unsuitable to the issue at bar. First, there is already a protective order in place, and the parties and this Court all agree that certain, disclosed information is confidential and protected. Second, Remington Arms did not address the precise issue of

whether in-house counsel should have access to the protected information, a situation which this Court finds altogether distinguishable from the facts of Remington Arms.

Consequently, given that the parties retain the same burdens as if no protective order existed with respect to disclosure of confidential information to B.F. Goodrich's in-house counsel, the Court finds U.S. Steel v. United States, 730 F.2d 1465 (Fed. Cir. 1984), instructive and applicable. In-house counsel are not inherently more likely to make inadvertent or accidental disclosure of confidential information than retained counsel. See id. at 1467-68 (stating further that business clients and retained counsel often enjoy "long and intimate relationships and activities"). The court in U.S. Steel looked to the circumstances of the relationship between a lawyer and client, particularly "counsel's activities, association, and relationship with a party." Id. at 1468. Furthermore, the court noted that in-house counsel are subject to the same rules of professional responsibility and corresponding sanctions as retained counsel. See id.

In the present case, Plaintiffs submit that there is no undue risk of disclosure because Mr. Rashid is not involved in "competitive decision-making," a factor noted in U.S. Steel's consideration of a lawyer's activities, association, and relationship to the client. Additionally, Mr. Rashid does not participate in the management of business aspects at B.F. Goodrich. Plaintiffs

further aver that Mr. Rashid is physically and organizationally isolated from competitive decision-makers. In Mr. Rashid's affidavit to the Court, he explains that B.F. Goodrich employs twenty-four in-house attorneys, nine of whom (including Mr. Rashid) provide support to the Aerospace Division. In Mr. Rashid's role, he advises the company solely on intellectual property law issues, but not on decisions such as pricing, sales, advertising, marketing, design, or sales strategy. Mr. Rashid further asserts that he has been involved in substantially all strategic decisions involved in this lawsuit thus far. Mr. Rashid pledges not to disclose the contents of any confidential information produced by Defendants and to abide by the protective order.

Upon consideration of Mr. Rashid's activities and relationship to B.F. Goodrich, the Court finds that Mr. Rashid is not involved in competitive decision-making. Mr. Rashid is adequately isolated from the competitive decision-making elements of the corporation so as to render the risk of inadvertent disclosure minimal. Moreover, Mr. Rashid affirmatively represented to this Court that he will make no disclosures in contravention of the protective order, and there is no reason to believe Mr. Rashid would inadvertently or purposefully disclose confidential information. The restrictions of the order apply to Mr. Rashid as they do to any person receiving confidential information. Additionally, the number of other in-house attorneys is a significant consideration; if Mr. Rashid was the only lawyer for the

Aerospace Division, the Court would find the risk of disclosure too great. The Court concludes that Mr. Rashid's employment need not entail advising B.F. Goodrich in areas relating to Defendants' trade secrets. Finally, discovery in this case is currently limited to the question of jurisdiction, and Plaintiffs' counsel represented at the hearing that Mr. Rashid's knowledge and advice is necessary for this particular issue. For all of the above reasons, Plaintiffs' Motion to Amend the Protective Order to Grant In-house Counsel Access to Attorney's Eyes Only Documents and Information is granted. Mr. Rashid shall be bound by the provisions of the protective order, and his access to confidential documents is limited to the jurisdictional issue.

## II. PLAINTIFFS' MOTION TO COMPEL DISCOVERY

At the motion hearing, Plaintiffs listed three categories in which Defendants have not produced documents in response to discovery requests: (1) information about a presentation made to Honeywell with respect to the specific product at issue in this lawsuit, an aircraft temperature sensor; (2) information about sales connections of Auxitrol Company of California and Fluid Regulators Corporation, purported sister companies of Defendant Auxitrol; and (3) information about Defendant Esterline's corporate officers and employees. The scope of this Order is limited to these three categories.

The Federal Rules of Civil Procedure contemplate liberal discovery; the information sought only need be "reasonably calculated to lead to the

discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 501 (1947). A party is allowed to fully explore the relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Discovery should not limited to matters in the pleadings because discovery is designed to help establish and clarify the issues in a case. See id. at 500-01. Additionally, discovery should not be limited to the merits of a case because other fact-oriented issues, possibly unrelated to the merits, may arise and properly be the subject of discovery. See Oppenheimer Fund, 437 U.S. at 351. In this particular discovery dispute, the relevant subject matter pertains to establishing personal jurisdiction over Defendants in this forum.

First, regarding the Honeywell documents, the Court finds that the documents may contain matter relating to jurisdiction. Documents relating to the presentation, even those to or from Arizona, may contain evidence of Minnesota contacts or lead to other correspondence or communications sent to or from Minnesota. At the time of the purported presentation, Honeywell was headquartered in Minnesota, and it currently maintain a facility in this state. Furthermore, the documents requested

specifically relate to the product at issue. Defendants maintain that Plaintiffs should request the documents directly from Honeywell, but Fed. R. Civ. P. 34(a) states that a party may request from another party any documents "which are in the possession, custody or control of the party upon whom the request is served." Under Rule 34, "control" does not require that the party legally own the documents. See Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000) (quoting Bank of New York v. Meridien BIAO Bank Tanzania, Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997) (citations omitted)). Consequently, Plaintiffs' motion to compel is granted with respect to this category of discovery.

Turning to the relevance of the sales connections of Auxitrol of California and Fluid Regulators, the Court finds that sales of Auxitrol products in the state of Minnesota is relevant to the issue of jurisdiction. Plaintiffs aver that Fluid Regulators is a wholly-owned subsidiary of Defendant Auxitrol and acts as Auxitrol's sales and marketing office in the United States for Auxitrol products. Likewise, Auxitrol of California is a wholly-owned subsidiary of Defendant Esterline. Information about subsidiaries is relevant to jurisdiction; evidence of control by the parent may allow the subsidiary's activities to be attributed to the parent for jurisdictional purposes. See Radaszewski v. Telecom Corp., 981 F.2d 305, 306-07 (8th Cir. 1992); Bielicki v. Empire Stevedoring Co., Ltd., 741 F. Supp. 758, 761-62 (D. Minn. 1990),

amended by 765 F. Supp. 991 (D. Minn. 1990). A parent corporation may be required to produce documents and information in the custody or control of its wholly-owned subsidiary. See Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129-30 (D. Del. 1986); In re Uranium Antitrust Litig., 480 F. Supp. 1138, 1152 (N.D. Ill. 1979); see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197 (1958). Plaintiffs have adequately shown that Defendants may have the right and power to control Auxitrol of California and Fluid Regulators. Accordingly, the Court finds documents in this category of requests relevant and discoverable. Defendants are ordered to produce sales information, correspondence, and marketing materials from the past five years relevant to activity by the two subsidiaries in the state of Minnesota.

Finally, Plaintiffs request documents relating to the relationship between Defendant Esterline and its subsidiaries, particularly the corporate officers and directors of Esterline and its subsidiaries. For the reasons set forth above, the Court finds that information concerning the relationship between Esterline and its subsidiaries is relevant to establishing jurisdiction. Such information includes Esterline's treatment of its subsidiaries' employees; common directors, officers, or employees; and the extent of Esterline's

managerial control, such as required preapproval, over its subsidiaries' business activities. Thus, Plaintiff's motion is granted in this respect as well.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Plaintiffs' Motion to Amend the Protective Order to Grant In-house Counsel Access to Confidential Information (Doc. No. 25) is **GRANTED**; and

(2) Plaintiffs' Motion to Compel Discovery (Doc. No. 30) is **GRANTED** as set forth fully in the body of this Order.

Dated: December 21, 2000.

JONATHAN LEBEDOFF
United States Magistrate Judge